HORACE NORTON *et al.,* Appellants, *v.* JEREMY HIXON, Jr., Appellee.

APPEAL FROM THE SUPERIOR COURT OF CHICAGO.

Where a sheriff under a writ of attachment levied upon a vessel, which passed into the hands of strangers with knowledge of the attachment, in equity, the lien of the attaching creditor will be allowed to follow the vessel, and attach itself to the money, in the hands of such strangers, for which the vessel was sold by them.

Equity will also reach the earnings of the ·vessel, and compel those who received her from the sheriff, to account for them. (BREESE, J.)

Where trusts of an official character have been violated, equity will take jurisdiction.

Where parties have time allowed them to file a further answer, which they neglect to do, the setting aside of a default for not answering, is matter of discretion. The motion to set aside a default should be founded on affidavit, and should be accompanied by the answer.

THIS was a bill in chancery, filed in the Cook County Court of Common Pleas, by Jeremy Hixon, Jr., against Horace Norton, Joel C. Walter, Edward K. Rogers, Wm. L. Church, and the Lexington Fire, Life and Marine Insurance Company, upon which default was taken upon the 18th day of January, 1859, for want of a further answer, and a decree entered on the 7th day of February, A. D. 1859, at the February term of said court, against Horace Norton, Joel C. Walter and Edward K. Rogers. On the 7th of March, the defendants, Walter and Rogers, moved the court to set aside the decree upon affidavits filed with said motion, offering to file their answer.

This motion being overruled, the defendants, Norton, Walter and Rogers, appealed to this court.

The bill alleges that Hixon, on the 14th of October, 1851, filed in the office of the clerk of the Cook County Court of Common Pleas, an affidavit for an attachment against the Lexington Fire, Life and Marine Insurance Company, a non-resident defendant, for the sum of $3,275, upon a certain draft, and prayed an attachment pursuant to the statute, and that such writ was issued to Wm. L. Church, then sheriff of Cook county, commanding him to attach so much of the property of said insurance company as would be sufficient to pay the debt; that the sheriff, under said writ, attached the schooner Buena Vista, as the property of said insurance company, and returned the writ into court; that the clerk gave the requisite notice, and proof of the same was duly made.

That afterwards the Lexington Insurance Company, by its attorney, appeared and contested the proceedings, and that on the 17th day of October, 1853, judgment was rendered in favor of Hixon against the insurance company, for $3,429, and costs, which judgment remains unpaid.

That on the 16th December, A. D. 1856, Hixon caused execution to be issued upon said judgment to the sheriff of Cook county; that John L. Wilson was then sheriff, who, upon the 20th day of February, 1857, returned the writ into court with the indorsement that he had demanded the steamer Buena Vista, and her earnings, of Wm. L. Church, late sheriff, who said he had not the schooner or her earnings in his possession, and being unable to find the same, returned the execution unsatisfied.

That Church was sheriff at the time when the attachment writ was levied, and at the time of issuing the execution had

gone out of office without delivering up the schooner or her earnings to his successor, John L. Wilson.

That after the levy of the attachment writ, and before the first of April, 1852, Wm. L. Church, then being sheriff, having said schooner in his possession, by virtue of said writ, put the same into the possession of Walter, Rogers and Norton, but upon what terms and conditions the complainant did not know; that ever since said schooner came to the possession of said Walter, Rogers and Norton, they had, either on their own account, or on the account of themselves and Church, run said schooner upon the lakes for the carriage of merchandise and freight for hire, and that in such business she was worth, had earned, or ought to have earned, over and above her expenses, $2,500 in each year, that is, for the years 1852, 1853, 1854, 1855, 1856, and up to the time of filing complainant's bill in 1857, and are still causing her to be run, and that she was worth, during the time aforesaid, and had earned, or should have earned, the sum of $13,000, which should be appropriated, or so much as may be necessary therefor, to the payment of complainant's judgment and costs and interest; but what amount of freight the schooner had earned, complainant had no means of ascertaining, without the discovery and account of Church, Norton, Walter and Rogers, and each of them.

That the said insurance company has some equitable interest or property to the amount of more than $100, which should be appropriated to the payment of complainant's judgment.

That Church, Norton, Walter and Rogers neglect and refuse to account for said earnings of said schooner, or to bring the same into court, or to produce said schooner to answer said judgment, and that the earnings and property are subject to the payment of said judgment and costs; that Norton, Walter and Rogers assert and pretend that they have sold the said schooner, but to whom or for how much, the complainant was not informed.

The complainant then charges that the insurance company refuses to surrender said property for the payment of the judgment, and Norton, Walter, Rogers and Church, in order to defeat and defraud the complainant, sometimes pretend that the said insurance company have no interest in said earnings, and at other times that the earnings are not subject to the payment of the judgment, and at other times, that they have some interest therein.

The bill then asks for an answer from each of the defendants, the insurance company, Church, Walter, Rogers and Norton, under oath, and that they may set forth whether the Buena Vista was not attached by Church upon the writ of attachment, and taken into his possession, and whether he did not put the same

into the possession of Norton, Walter and Rogers, and when and whether she has not been run by them, or by their assent or direction, and whether they have sold said schooner, and when and to whom, and upon what terms and conditions, and for how much, and in what trade, and for what freight, and what amount of freight she has earned since she came into the possession of Norton, Walter and Rogers, or either of them.

The bill then prays process of summons against all the defendants, and that the complainant may have such other, further or different relief in the premises, as to equity and good conscience may seem meet.

Summons was served upon Walter, Rogers, Norton and Church, on the 10th August, 1857, and notice of publication issued to the insurance company.

To this bill, Church, Norton, Walter and Rogers, filed their demurrer.

The demurrer was withdrawn, and the defendants ruled to plead by the first of August, 1858.

On the 15th of November, 1858, Walter and Rogers filed their joint and several answers, as follows:

Defendants admit the suing out of the attachment and its levy upon the schooner Buena Vista, but deny that the property belonged to the Lexington Insurance Company.

They allege that, at the time of the levy, the Lexington Fire, Life and Marine Insurance Company owned two-thirds and the Merchants' Mutual Insurance Company one-third of said schooner Buena Vista, and that complainant obtained no lien upon the interest owned by the Merchants' Mutual Insurance Company.

They deny that the Lexington Insurance Company appeared and contested the attachment suit, but admit that said company appeared and pleaded the jurisdiction of the court, and insist that such appearance did not authorize the entry of a general judgment against the company.

They admit that complainant obtained a judgment in the attachment suit as stated in his bill, but do not know whether the same is satisfied or not.

They admit the suing out of the execution, and that the same was returned unsatisfied.

They state that on the 13th October, 1851, Horace Norton, Joel C. Walter and Edward K. Rogers, filed an affidavit for an attachment against the Lexington Fire, Life and Marine Insurance Company, setting forth that the said company was indebted to them for $4,000, for a loss upon a policy of insurance in the affidavit mentioned; that an attachment was issued and delivered to the sheriff of Cook county, returnable at the next October term of the court; that on the 14th day of October, the

sheriff levied upon the Buena Vista; that the writ was returned on the said 14th October, with the levy indorsed; that the clerk of said court, on the 18th November, 1851, gave notice for four successive weeks, pursuant to statute, and that afterwards, on the 2nd of July, 1857, a judgment was rendered in favor of plaintiffs and against the Lexington Insurance Company, for the sum of $4,000 and costs, which judgment remains in full force and wholly unsatisfied.

That on the 13th October, 1851, the said Norton, Walter and Rogers also filed an affidavit in the office of the clerk of the Common Pleas Court, for an attachment against the Mutual Insurance Company, a non-resident corporation, wherein they stated that the said company was indebted to them in the sum of two thousand dollars for a loss of a vessel insured by said company; that a writ was issued and delivered to the sheriff of Cook county, returnable at the October term of said court, both the last mentioned attachments being returnable at the same term with complainant's attachment; that the sheriff, upon the 14th of October, 1851, by virtue of said writ, levied upon the Buena Vista, as the property of said Merchants' Company, and returned his writ into court; that the clerk gave the statutory notice, etc.; that upon the 2nd day of July, 1857, a judgment was rendered in said suit in favor of the plaintiffs and against the defendant, for the sum of two thousand dollars and costs, which judgment remains in full force.

They further state, that on the 20th day of July, 1857, Norton, Walter and Rogers caused executions to be issued out of the Cook County Common Pleas upon their said judgments against said Lexington Insurance Company, and caused them to be delivered to the sheriff of Cook county, and by virtue thereof the said sheriff, on the 21st July, 1857, took possession of all the property levied on under the attachments, and posted up notices of sale of the Buena Vista, and by virtue of the executions the sheriff did, on the 31st day of July, 1857, at 10 A. M., at the place mentioned in the notices, sell the Buena Vista at public auction; that complainant was present by his attorney and bid thereon, and the property was struck off at fifteen hundred dollars; that the sheriff received the money, and either holds the same, or it has been paid into court to be distributed by the court to the parties respectively entitled thereto.

They insist that the sale destroyed the lien of complainant, acquired by his attachment writ upon the property; that complainant is only entitled to his *pro rata* share of the money realized upon the sale, and that complainant, by being present and bidding at said sale, is estopped from denying the validity thereof.

Defendants further admit, that at the time of the levy of the attachment writs, Wm. L. Church was sheriff of Cook county, and as such sheriff received such writs of attachment and executed the same, and that afterwards, about the time in the bill of complaint stated, the said Church delivered to said defendants, the Buena Vista, upon no condition except that she should be returned to answer whatever judgment might be rendered in the several suits, or unless the sheriff should demand the same, and that said vessel had been run and used during all the season of navigation, up to the time when she was advertised and sold as above stated. They deny that Church had any interest in the earnings of the vessel, or was in any way connected with the running of her, but Norton, Walter and Rogers received from said Church the exclusive control of her, and were entitled to her earnings.

Defendants state that the use of the vessel was greatly for her benefit; that the progress of decay was thereby hindered; that if she had remained idle during the pendency of said suits, and up to the time of sale, she would have become almost worthless; that said Church acted in good faith for the best interests of all concerned in intrusting the vessel to Norton, Walter and Rogers. They deny that complainant is entitled to the earnings of the Buena Vista, or any part thereof, and claim the same right to object to that portion of bill as if they had demurred thereto.

Defendants further state that the vessel, after she came into their possession, was run at a great loss; that they had not the means of determining the precise loss, for two reasons: first, that they purchased and shipped grain and coal on their own account upon said vessel, upon which the vessel invariably realized a greater profit than the amount of their freights; that in making up the account of the vessel, they credited all the profit of said grain to the account of the vessel; second, because some of the items of loss upon said vessel were never charged to her account, and defendants have no means of ascertaining such items; that according to their best knowledge, information and belief, the expenses and repairs of said vessel amounted to the sum of　-　　　-　　　-　　　-　　　-　　　$17,567.04
And the receipts and freights to　　ʻ-　　　ʻ-　　　14,387.43

$3,179.61

Making a net loss upon the vessel, of three thousand one hundred and seventy-nine dollars and sixty-one cents.

Defendants further say, that if Church exceeded his authority in placing the schooner in the hands of Norton, Walter and Rogers, and in the other matters charged in said bill, complain

ant has a full and adequate remedy at law for damages, and this court has no jurisdiction.

Defendants deny all combination, etc.

On the 16th December, 1858, the complainant filed his exceptions to the answer of Walter and Rogers, as follows:

1st. That in undertaking to set out to whom the Buena Vista was sold upon execution, the name is left blank.

2nd. That defendants do not state whether they ran the vessel all the time charged in the bill of complaint, or how long they ran her, and what seasons, and how long others ran her, and what seasons.

3rd. Defendants do not state how long and at what times the vessel was run, when and where they purchased and shipped grain and coal on account of the vessel, and credited profits to her.

4th. Defendants do not state whether said vessel was reasonably worth $2,500 per annum, or what was the reasonable value as vessels were then rented and chartered for the seasons mentioned in the bill, nor do defendants answer that part of the bill in any manner, or whether they let the vessel to hire, and how long, and for what price she was so let.

5th. They have not given an account, setting out the items of earnings and expenses and repairs.

6th. They have improperly claimed to offset the repairs of said vessel against her earnings.

7th. They have not given any specific or proper account of the earnings of said vessel in any one or all the seasons charged in the bill.

8th. They have not answered whether they sold the vessel or when, or for what and to whom, and whether she was subsequently sold, and when and for how much, and to whom.

9th. They have not answered in what trade and employment the said vessel had been engaged, and what she carried each trip during each season she had been run, and between what places she had been employed.

Exceptions to defendants' answer were referred to master in chancery to report thereon. The master's report sustained all the exceptions except the sixth, which the master stated was not well taken.

And on the same day, the 7th January, 1859, an order was taken by complainant, requiring defendants to make further answer within ten days.

On the 18th day of January, A. D. 1859, a bill of complaint was taken *pro confesso* against defendants, and an order of reference made to the master in chancery to take proofs, etc.

On the 7th of February, 1859, the report of the master was filed.

Attached to the report was a notice to defendants' solicitors that the case was referred to the master in chancery to take proofs, and that on the 1st of February, 1859, at 9 A. M., the complainant would proceed to take the testimony of certain witnesses named in said notice, with an affidavit of the service of the notice upon the 26th day of January, 1859.

The report states, that on the 1st of February, 1859, at the master's office, complainant appeared by his solicitor, who presented to him the notice attached to the report, and the master proceeded to take testimony.

No one appeared to cross-examine any of the witnesses.

The master, after setting forth the testimony of the above witnesses, proceeded in his report as follows:

The bill alleges that complainant, on the 14th October, 1851, by virtue of a writ of attachment, sued out against the Lexington Fire, Life and Marine Insurance Company, levied on the schooner Buena Vista, as the property of the insurance company; that on the 17th October, 1853, a judgment was rendered in the Cook County Court of Common Pleas against said insurance company for $3,429 and costs, which judgment remains unsatisfied; that execution was issued December 14, 1856, on said judgment against said insurance company, and directed to the sheriff of the county of Cook, who, on the 20th day of February, 1857, returned said writ into court indorsed as follows: " I have demanded the schooner Buena Vista and her earnings, of Wm. L. Church, late sheriff. He says he has not said schooner, sails, chains, rigging, or her earnings, in his possession, and being unable to find the same, I return this execution no part satisfied, February 20, 1857."

That said Church was, at the time of the levy of the attachment, sheriff, etc., and at the time of the issue of the execution he had gone out of office without delivering up said schooner, etc., to his successor, John L. Wilson; that after the levy of said writ, and before April 1, 1852, said Church, then sheriff, having said schooner in possession, put her in possession of, or let her to Walter, Rogers & Norton, upon terms unknown to complainant, and that she was run by them, etc., and was worth $2,500 over expenses each year, etc., which earnings ought to be appropriated to the payment of complainant's judgment.

That Norton, Walter, Rogers and Church neglect and refuse to account for said earnings of said schooner, or to bring the same into court to satisfy said judgment, or to produce said schooner to answer said judgment, and that said earnings and property are held and bound to the payment of said judgment, costs, etc.

That on or about the first day of March, A. D. 1853, the

said defendants, Norton, Rogers & Walter, sold the said schooner, her sails, rigging and apparel, to Boyce & Fisk, of Chicago, for the sum of $5,500, $500 thereof cash at the time of sale, and the balance in $500 payments deferred, covering a period of two years, drawing interest at six per cent.; that the two last payments were deferred for one year or thereabouts, after maturity, at an interest of ten per cent.

That the value of the use or charter of said vessel, over and above all expenses, from the 14th October, 1851, to the close of navigation of that year, was the sum of $620, and for the season of navigation for the year 1852, the sum of $1,750 over and above all expenses. That said schooner was 174 tons burden, and that she went ashore on lake Michigan, about fifteen miles this side of Sheboygan, about fifteen months since, and went to pieces.

Statement of account:

| | |
|---|---|
| Sale price of schooner................ .......................... | $5,500.00 |
| Interest from March 1, 1853, to February 1, 1859................... | 1.952.50 |
| Extra interest on two deferred payments......................... | 40.00 |
| Value of earnings of vessel from Oct. 14, 1841, to close of navigation, | 620.00 |
| Interest on earnings from December 1, 1851...................... | 216.16 |
| Value of earnings for season of 1852............................ | 1,750.00 |
| Interest on said earnings................. ..................... | 647.50 |

$10,726.16 .

From the evidence, I am of opinion that the prayer of the complainant should be granted, and that a decree should be entered against the defendants, Norton, Walter & Rogers, for the amount due the complainant upon his judgment at law, with the costs and interest thereon, and the costs of this suit to be taxed.

L. C. P. FREER, Master, etc.

On the 7th February, 1859, the complainant entered his decree as follows:

The said defendants, having made default to comply with the rules of this court made herein, and the said complainant's bill of complaint having been taken as confessed, and the said bill having been referred to L. C. Paine Freer, the master in chancery, in and for the county of Cook, to take proof and make report of his proceedings thereupon to this court, and said master having made report, which is this day filed, and in all things confirmed, in which report the said master sets forth and reports, among other things, that,

(Here follows all the report of the master as above set forth, which is subsequent to the testimony of the witnesses. The decree then proceeds as follows:)

The court having considered the case, and it appearing by the

records of this court that there is now due to said complainant, upon his judgment obtained in his favor against the Lexington Fire, Life and Marine Insurance Company, in said attachment suit mentioned in his said bill of complaint, for principal, $3,429, interest, $903.37, and costs taxed at $67.90, amounting in all to the sum of four thousand and four hundred dollars and twenty-seven cents.

Now, therefore, it is ordered and decreed that the said Horace Norton, Joel C. Walter and Edward K. Rogers, pay to the said complainant, Jeremy Hixon, Jr., or his solicitor, the said sum of four thousand four hundred dollars and twenty-seven cents, ($4,400.27) and the costs of this suit to be taxed, and interest from the date of this order, within twenty days from this day, and that in default of such payment, the said complainant have execution therefor in the usual form against the said defendants, Horace Norton, Joel C. Walter, and Edward K. Rogers.

Walter and Rogers filed a motion to set aside the default and decree against them upon affidavit, offering at the same time to file their amended answer.

The affidavits filed were those of Joel C. Walter, who said that the defendants had, as they were informed by counsel and verily believed, a good and substantial defense upon the merits, which defense was more particularly set forth in the answer that day sworn to by deponent and E. K. Rogers, to which answer deponent referred and made it a part of his affidavit; that early in February last, or about that time, deponent was applied to by his counsel, E. S. Williams, and requested to prepare and furnish the necessary accounts and statements to annex to an amended answer, and that deponent employed J. Chatfield, the book-keeper of Boyce & Fisk, to examine the books of Boyce & Fisk, and that Chatfield was engaged for about a week in examining said books and in preparing an account, and that subsequently, said Chatfield had been employed for a part of the time, and Mr. Higgins a large part of the time until Tuesday last, in making out the statements annexed to the answer that day signed by deponent and Rogers, that it had required great labor and a long time to prepare the necessary statements to annex to said answer, and the same, as deponent believed, had been prepared in as short a time as was possible, since said Williams applied to said deponent.

These parties filed two other affidavits, with this application.

The amended answer of Walter and Rogers, referred to in the affidavits, and presented to the court to be filed, sets forth the facts and makes the admissions of the original answer not substantially varying therefrom, except as follows:

It fills the blank left for the name of the purchaser of the Buena Vista at the sheriff's sale, by stating that the vessel was struck off to J. C. Walter for Henry Greenbaum, or Greenbaum & Brothers, and that the sheriff delivered the vessel to Greenbaum & Brothers upon such sale.

The defendants state that after the delivery of the vessel to them by the sheriff, they run the vessel on their own account, late in the fall of 1851, down to some port on Lake Erie, where she laid up for the winter; that they run her for the season of 1852, said vessel being engaged in carrying grain and merchandise from Chicago to Buffalo, and divers other ports and places between these two cities, and in carrying coal and merchandise from divers ports and places upon the great lakes, upon her return trips to Chicago, and on the 1st of February, 1853, H. Norton & Co. entered into a written agreement with Boyce & Fisk, in consideration of the payment of $5,500, to be paid $500 in March, 1853, and the remaining $5,000 in monthly payments of $500 each, commencing in May, 1853, with interest, to convey to Boyce & Fisk, all their right to the schooner, the conveyance not to be made until the termination of the suit of Jeremy Hixon against the Lexington Fire, Life and Marine Insurance Company, the possession in the meantime to remain with Boyce & Fisk; all which, by reference to said agreement, ready to be produced and proved, will more fully and at large appear.

They state that under this agreement, Boyce & Fisk took possession of the vessel, and ran her for the years 1853, 1854, and part of 1855, but that no writing other than the agreement above mentioned, was ever made by them for the conveyance of said vessel to Boyce & Fisk, or any other person; that to the best of their knowledge, information and belief, said vessel was run by one Kough, and by Greenbaum & Brothers, from the time Boyce & Fisk ceased to run her, up to the time she was seized by the sheriff under the execution.

That defendants caused the vessel to be returned to the sheriff of Cook county, and she was levied on by him; that complainant's attorney was present at the sheriff's sale under the execution, and bid upon the vessel; that the vessel was then in a much better condition and more valuable, than she would have been had she remained idle for the time intervening between the issuing of the attachment, and the levy of the execution; that this fact was well known to the attorney of complainant, and said attorney also knew that said vessel had been run by the said H. Norton & Co., or their grantees or lessees, as defendants believe; that if said vessel had remained in the sheriff's posses-

29

sion, the cost and expense of custodian's fees would have probably equalled the value of the vessel had she remained idle.

That in their previous answer they had stated, upon information derived from the book-keeper of Boyce & Fisk, that the loss of the schooner over and above her earnings, while she was run by H. Norton & Co., and by Boyce & Fisk, amounted to $3,179.61; that a more accurate examination of the various items of the books of Boyce & Fisk, and a careful examination of the books of H. Norton & Co., show that the gross earnings of the vessel exceeded the amount stated in the original answer, about $288, and the gross expenditures of the vessel exceeded the amount stated in the original answer by about the like sum, leaving the amount of losses actually sustained within a few dollars of the sum stated in the original answer.

That after a careful examination of their own books, they have prepared what defendants regard as an accurate estimate of the expenditures and earnings of the Buena Vista, and they believe Exhibit No. 1, attached to their answer, contains a true and faithful statement of the earnings and expenses of said vessel, from their books, and they attach the same to their answer, and pray that it be taken as a part thereof.

They say they have caused a careful examination to be made of the books of Boyce & Fisk, which has required much time and labor; that from said books they have prepared a statement of the earnings and expenditures of the vessel while she was run by Boyce & Fisk, and to the best of their knowledge, information and belief, Exhibit No. 2 contains as full and perfect statement of the earnings and expenditures, as defendants can give; that by these exhibits it appears that the losses of said schooner while run by H. Norton & Co., and Boyce & Fisk, amounted, over and above her earnings, to the sum of $3,170.37, and defendants believe they fully equalled, if they did not exceed, that sum; that there are other items which ought to be charged, as defendants believe, against the schooner, but the exhibits present the accounts as definitely as defendants can present the same; that after Boyce & Fisk ceased to run the vessel, defendants do not know in what business she was engaged, or to what ports and places she was run, and have been unable to obtain a statement of her earnings and expenditures, although they have applied for and endeavored to obtain the same, but defendants have been informed and believe that said losses exceed the sum of two thousand dollars over and above her earnings.

Defendants say they do not know, and cannot state, what the vessel was reasonably worth each season for the time mentioned in the bill, as vessels were then rented and chartered, but they

deny that said vessel was worth $2,500, or any such sum per season ; that with the exception of the season she was run by the defendants, to their best knowledge, information and belief, she was losing money every season, and in the opinion of defendants, her charter was worth little or nothing.

Defendants deny that they ever let the vessel for hire.

The answer is sworn to by Walter and Rogers.

Attached to the answer are the Exhibits 1 and 2, which show, in the aggregate, a total loss for the time covered by the accounts, of $3,170.37.

On the 19th of March, 1859, complainant and defendants filed a stipulation, that in case the judge of the Common Pleas Court should, between that day and the 15th day of April, overrule the motion for setting aside the default and decree, and the defendants, or any of them, should determine to appeal this cause to the Supreme Court, then the appeal should be taken to the April term, 1859, and should be heard at that time, if the judges would allow it to be heard.

On the 14th of April, 1859, another stipulation was made and filed, as of the 12th, agreeing that the order in this cause be entered as of the 12th April, and that all papers either party might find it necessary to file to perfect the appeal, be filed as of April 12, 1859.

On the 12th of April, the motion of defendants to set aside default, etc., overruled, and appeal prayed, which was granted.

The general error is for want of equity in the bill.

The special errors assigned are as follows :

That the court erred in entering a decree against Norton, Walter and Rogers alone, and in not joining with them in said decree, William L. Church and the Lexington Fire, Life and Marine Insurance Company.

That the court erred in rendering a decree upon matters and things not included in complainant's bill.

That the court erred in entering a decree against the appellants, in the absence of evidence of the service of notices and orders, which should have been given to the appellants.

That the court erred in overruling the motion made by Walter and Rogers to set aside the default and decree rendered against them.

And that the court erred in refusing to allow the defendants, Walter and Rogers, to file their amended answer, when the same was presented by them to the court.

WILLIAMS, WOODBRIDGE & GRANT, for Appellants.

H. B. HURD, and G. GOODRICH, for Appellee.

CATON, C. J.   But few cases before this court have been the subject of more frequent or more protracted conference than this, and certainly none where the amount involved in the controversy has not been greater.   It is not necessary to decide the question, which has been so much discussed and so much considered, whether the earnings of the vessel, after she was attached and while she should have been in the custody of the sheriff, are liable to be applied to the payment of the judgment obtained upon the debt for which she was attached, for the case shows beyond all controversy, that the vessel sold for more than sufficient to pay the judgment which the complainant obtained in the attachment suit.

Admitting the jurisdiction of the court of equity to grant relief by ordering Norton & Co., who sold the vessel and received the pay therefor, to apply that money to the payment of this judgment, it is objected that the statements of the bill are insufficient to warrant that relief.   The frame of the bill would no doubt indicate that the complainant was not advised whether the vessel had been sold or not, or at any rate that he was not aware that she had been sold for enough to pay his judgment, and it seems to have been the object of the bill to reach the earnings of the vessel, rather than the proceeds of the sale. After much consideration, we are not prepared to hold that the bill is not sufficient to reach the proceeds of the sale of the vessel in the hands of the defendants, as well as her earnings, but on the contrary, we think it is sufficient for that purpose. This is not a case where a precise statement of all the particular facts, a knowledge of which may be confined to the defendants alone, is required to be stated in the bill.

The most important, if not the most difficult question in the case, is that of jurisdiction.   That the complainant had a complete remedy at law, by an action on the sheriff's bond, there can be no doubt, and ordinarily this is sufficient to induce a court of chancery to decline to take jurisdiction of the matter. Yet there are many cases where this is not so.   Where trusts have been violated, although they be trusts of an official character, equity takes jurisdiction.   There are many cases where executors and administrators have been held answerable in equity, at the suit of creditors and legatees, for misapplication of assets, although the complainant had a perfect remedy at law, on the official bond of the defendant.   The same jurisdiction seems always to have been exercised over assignees in bankruptcy, where the law also afforded the same remedy.   In such cases as these, no doubt seems to have been entertained of the jurisdiction of the court, to afford the appropriate remedy. Here is as much a violation of a trust as in those cases.   The

sheriff, in violation of the confidence and trust reposed in him, and of his duty to the complainant, delivered the vessel to Norton & Co., who used her for a long time at great profit, and then sold her. Now whatever may be said of the right of the attaching creditors to have these earnings applied to the satisfaction of the debt for which she was attached, there can be no doubt that the complainant had, by virtue of his attachment, a specific lien on the vessel itself. And when she is sold in disregard of this right, and the money passed into the hands of strangers, with full knowledge of the complainant's attachment, as was the case here, in equity, at least, this lien must be allowed to follow and attach itself to the money. Since there was sufficient of the purchase money of the vessel in the defendants' hands, to answer the amount decreed to the complainant, it is unnecessary to inquire, whether the court below designed it should be paid out of the earnings of the vessel or the money for which she was sold. It is sufficient that there was money in the defendants' hands, sufficient to satisfy the complainant's demand, which is undoubtedly liable, in equity at least, to be applied in such satisfaction. Hence, it is unnecessary to inquire, who is entitled to the earnings of the vessel.

The decree must be affirmed.

WALKER, J. I concur with the Chief Justice in the conclusion at which he has arrived in the foregoing opinion. But at present, I am unprepared to hold that the earnings of the vessel may be reached by a bill in equity. It, however, being unnecessary in the view I take of the case, to determine that question, I shall decline its discussion at this time.

*Separate Opinion by* BREESE, J. I go further than the majority of the court in my view of this case. The facts are, that the appellee, being a creditor of the Lexington Fire, Life and Marine Insurance Company, sued out an attachment, which was levied by the sheriff, Church, on a vessel called " *Buena Vista*," as the property of the company. That the sheriff put her in the possession of Norton, Rogers and Hixon, to be used, either for his and their private benefit, or for their benefit alone ; that Norton & Co., during all the seasons since the vessel came into their possession, used her for the carriage of merchandise, lumber, and other cargo or freight, for hire, and that in such business she was worth, had earned, or ought to have earned, over and above expenses of navigating her, two thousand five hundred dollars in each of the years they had such possession, that is, during the seasons of 1852–4 and 5, and 1856, and up to the time of filing the bill, and were still using her. That in those

years she had earned, or should have earned, thirteen thousand dollars, which ought to be applied to the payment of complainant's (appellee's) judgment. That complainant has no means of ascertaining the facts, without a discovery from Church, Norton & Co., and each of them ; that they neglect and refuse to account for the earnings, or to bring them into court, or to produce the vessel to answer the judgment ; appellee claiming that the earnings and property are subject to the payment of the judgment and costs. That Norton & Co. claim to have sold the vessel, but to whom, or for how much, he is ignorant. These are the principal allegations in the charging part of the bill, and they are followed by the prayer, that the defendants may, each of them, answer under oath, whether the Buena Vista, her anchors, chains, rigging and sails, were not attached by said Church, as sheriff, upon the writ of attachment in favor of complainant, and taken into his possession ; and whether he did not let or put the same, and when, into the hands or possession of said Norton & Co., and whether she has not been run by them, or by their assent or direction ; and whether they have sold her, and to whom, and on what terms and conditions, and for how much, and in what trade and for what freight she has been run, and what amount of freight she has earned since said letting. And with the prayer for relief, " and that your orators may have such other and further, or different relief in the premises, as to equity and good conscience may seem meet."

It will be observed, no relief of any kind is prayed by the bill to which the prayer " for other and further or different relief" could apply, and it was therefore demurrable for want of form, had the point been made. There is no specific prayer that the proceeds of this vessel be applied to the payment of this judgment, yet that is manifestly the scope and purpose of the bill, and we can carry out that purpose if the prayer of the bill does not forbid ; that it does not, is evident. The court could decree according to the case made by the bill and proofs, they corresponding.

I do not understand these allegations in the bill as the appellants seem to understand them. The appellee does not claim the legal title to the vessel attached, but rather, as the general ownership was in the defendant in attachment, he had an equitable interest, by means of his levy, to the extent of his judgment, and the sheriff had a special property in the vessel, subject to the rights of all contending parties, and if the vessel was not produced to satisfy his judgment, but was let out or hired to others by the sheriff, the appellee was entitled to an account for her net earnings, and to have his judgment paid out of them, or if sold, out of the proceeds of the sale. This seems

to me to present a plain case for the interposition of a court of equity, one of whose familiar subjects of jurisdiction and cognizance is the execution of trusts, and although a court of law might, in a circuitous and expensive mode, effect a remedy by garnishment, or by action on the sheriff's bond, yet it would not be so searching and effectual as chancery could apply. It cannot be denied that the appellee acquired a lien on the vessel by his writ of attachment; that when the sheriff took it into his possession, he became a trustee, as well for the appellee as for others who might have an interest in her. The sheriff was bound to account for the property, and if he put it out of his power to produce it to be sold under the execution, and, in violation of the laws and his duty, placed it in the hands of other parties, who have made earnings by the use of her, and had finally sold her, and cannot now produce her to satisfy the execution, I think a case has arisen to call into exercise the powers of a court of chancery, which by a searching examination of the consciences of the parties implicated in the transaction, can effect a full discovery of all the facts necessary to be known. The appellants admit that they are the receiptors of the sheriff —his servants—responsible to him only, and between whom and the appellee there is no privity, either of contract or estate. The sheriff being the trustee for all concerned in the goods attached, if they passed into the hands of his servants for safe keeping or otherwise, shall it be said a court of chancery has no power to compel them to account to the parties interested? It requires neither privity of contract or of estate for such purpose. The power of the court attaches on the trust property, and it, or its avails, can be pursued into the hands of any and all persons who may have possessed themselves of it. When the vessel was hired or let to Norton & Co. it was property in trust, and any party interested in it ought to be allowed to compel a discovery as to the disposition of it. The cases cited by the appellants' counsel, and their argument to the effect that there is no privity of contract between them and the appellee, shows that a suit at law could not be maintained against them by the appellee. The act of the sheriff in thus disposing of this vessel was a wrong act, and these appellants, participating in it, are in the condition of all other persons who enter into an unlawful transaction with one who is intrusted by law with a fund for the benefit of others. All such parties may properly be joined as defendants in a bill in chancery to discover the proceeds of the trust, and to compel an account. All persons implicated in a breach of trust, fraud, or other illegal act, may be made parties, although they may have no interest in the subject.

I do not regard this as a creditor's bill, either in form or sub-

stance, and therefore the objection that no mutuality of dealing is shown, can have no influence. It is a bill to get at the proceeds of property on which the appellee had an equitable lien, while in the hands of the sheriff, and which the sheriff, by his own wrongful act, put into the possession of his co-defendants, who made large profits by the use of it, and then sold it for a large sum of money. See Story's Equity Jurisprudence, 695, where the principle is thus stated on which this bill can be sustained: "When a trustee, or other person standing in a fiduciary relation, makes a profit out of any transactions within the scope of his agency, or authority, that profit will belong to his *cestui que trust*, for it is a constructive fraud upon the latter to employ that property contrary to the trust, and to retain the profit of such misapplication, and by operation of equity, the profit is immediately converted into a constructive trust in favor of the party entitled to the benefit; nor is the doctrine confined to trustees strictly so called. It extends to all other persons standing in a fiduciary relation to the party, whatever that relation may be." But upon the ground of fraud as well as trust, the jurisdiction of chancery in this case, it seems to me, cannot be questioned. In regard to frauds, actual or constructive, courts of equity have adopted broad and comprehensive principles in exercising their remedial justice. And especially where there is any fraud touching property, they will interfere and administer sometimes severe justice in favor of innocent persons who are sufferers by it, without any fault on their part. For this purpose they will convert an offending party into a trustee, and making the property itself subservient to the proper purposes of recompense, by way of equitable trust or lien, and a fraudulent purchaser will be held a mere trustee for the honest but deluded and cheated vender. Ib. 698.

I do not well see how these parties could be reached, except by a proceeding in chancery, where this vessel, its earnings and avails can be subjected to the appellee's equity. The appellee has no legal title to the vessel, nor is there any privity of contract or of estate between him and the appellants, which he can assert in a court of law, and his remedy must of necessity be in equity. These views sustain the ruling of the court in allowing the exceptions to appellants' answer. On their being allowed, and the answer adjudged insufficient, the appellants were allowed time within which to file a further answer, which they did not choose to do, and on their failure the bill was taken for confessed, and the matters referred to a master, who, on proof being heard, reported to the court, on which the decree passed. This was all regular, and in strict conformity with the statute. The amount found is sustained by the proofs. The refusal of

the court to set aside this default, was a matter of discretion in the Superior Court, but if it was not, it is one of the essential requisites, where a default of this character is sought to be set aside, that the motion shall not only be founded on an affidavit, but a full and perfect answer shall accompany it. I have looked into this answer, and find it obnoxious to some of the exceptions taken and allowed to the original answer. It does not show any account of their dealings with the vessel from the time she came into their hands, nor of the sale to Boyce & Fisk, or of the five thousand five hundred dollars they paid for her; nor do they show what her earnings were after Boyce & Fisk sold her. On a rule for further answer, a party files a defective or insufficient answer at his peril. The decree of the court below is affirmed.

*Decree affirmed.*